IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARWAN DAYEM, | ) Case No. 1:20-cv-1790 |
| | ) |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) THOMAS M. PARKER |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

Plaintiff, Marwan Dayem, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act.[1] Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Dayem's application for DIB must be AFFIRMED.

**I.     Procedural History**

On October 6, 2017, Dayem applied for DIB.  (Tr. 147-48).[2]  Dayem alleged that he became disabled on April 7, 2016, due to: "1. Diabetes, 2. High C[h]olesterol, 3. High blood pressure, 4. Reoccurring hernia, [and] 5. Nerve pain stomach arms and legs."  (Tr. 164).  The Social Security Administration denied Dayem's application initially and upon reconsideration.  (Tr. 57-85).  Dayem requested an administrative hearing.  (Tr. 99-100).  ALJ Keith Kearney

---

[1]   This matter is before me pursuant to 42 U.S.C. § 405(g), and the parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 14; ECF Doc. 16.
[2]   The administrative transcript appears in ECF Doc. 12.

heard Dayem's case on March 19, 2019 and denied the claim in a June 5, 2019 decision. (Tr. 12-56). On June 9, 2020, the Appeals Council denied further review, rendering the ALJ decision the final decision of the Commissioner. (Tr. 1-6). And on August 12, 2020, Dayem filed a complaint to obtain judicial review. ECF Doc. 1.

**II.     Evidence**

    **A.     Personal, Educational, and Vocational Evidence**

Dayem was born on January 15, 1959, and he was 57 years old on the alleged onset date. (Tr. 147). He had a fourth-grade education. (Tr. 165). And he had past relevant work as a convenience store manager. (Tr. 52, 170).

    **B.     Mental Health Treatment Records[3]**

Although Dayem's arguments on judicial review challenge the ALJ's assessment of his mental health impairments, a review of the objective treatment records reveals a dearth of mental health symptoms or treatment. *See* (Tr. 231-516, 525-572, 578-631). On the rare occasions that mental health is *discussed* among the objective treatment records, those records reflect that Dayem either: (1) reported no history of psychiatric symptoms, (Tr. 276, 300); or (2) denied having any mental health symptoms, such as anxiety, agitation, or confusion, (Tr. 237, 241, 248, 266, 268, 341, 496, 588). Further, treatment examinations that addressed Dayem's mental health condition resulted in findings that he was alert, oriented, and cooperative; and he had normal mood, affect, behavior, judgment, and thought content. (Tr. 237, 241, 249, 267-69, 277, 300, 341, 481, 497, 588, 604).

---

[3] Because Dayem's argument on appeal challenge the ALJ's evaluation of mental health impairments only, the Dayem's physical treatment records need not be discussed. And, to the extent they might be relevant, the court adopts the ALJ's discussion of Dayem's physical treatment records. *See* (Tr. 21-23).

A comprehensive review of the record reveals only three occasions on which Dayem reported *possible* mental health symptoms to a treatment provider. On January 4, 2017, Dayem told Shawn Owen, DO, that he felt *unmotivated* to change his lifestyle to fit within a diabetic diet. (Tr. 480); *see also* (Tr. 289) (noting that Dayem's *son* said that he was tired of getting insulin injections). On September 5, 2017, Dayem told Shawn Owen, DO, that he was *fatigued* daily, and Dr. Owen attributed that condition to sleep apnea. (Tr. 495). And on December 5, 2017, Dayem reported *feeling depressed* about his pain, and Dr. Owen concluded that he had a vitamin D deficiency. (Tr. 531, 543).

      **C.**      **Relevant Opinion Evidence**

            **1.**      **Consultative Examiner Opinion**

On January 5, 2018, Charles Misja, Ph.D., conducted an interview and psychological evaluation. (Tr. 517-24). Dayem told Dr. Misja that he had memory problems and difficulty dealing with people, especially because he became irritable when asked to adjust to or learn new ways to perform tasks. (Tr. 518-19). But no memory deficits were observed during the interview. (Tr. 522). Dr. Misja noted that Dayem's problems were related to his poor command of English, and he had virtually no social life, didn't perform any chores at home, had difficulty sleeping, and did little more than watch television. (Tr. 518-21).

On examination, Dayem was cordial, displayed no behavioral extremes, had unremarkable speech free from pathology, and was fully oriented. (Tr. 520-21). Dayem said he had moderate depression and anxiety, and he said he didn't like when people didn't listen to him. (Tr. 520-21). Dr. Misja noted that Dayem couldn't do serial 7s or 3s, but he could count forward to three and backwards to two. (Tr. 521). He didn't know which continent Brazil was on; couldn't explain why people should study history; couldn't interpret "fall seven times, stand up

eight;" couldn't identify how a dog and a cat are alike; and couldn't define "terminate." (Tr. 521). Dr. Misja estimated that Dayem had "very low" functioning in the average range of intelligence. (Tr. 521).

Dr. Misja opined that Dayem would need "some assistance understanding, remembering, and implementing ordinary instructions," but also noted that he had "no difficulty understand[ing] what his son [said] or in keeping pace with the interview." (Tr. 522). Based on Dayem's son's representations that Dayem was increasingly irritable and obstinate, Dr. Misja determined that he would "likely" have intermediate to severe "[p]roblems" in responding appropriately to supervision and coworkers. (Tr. 522-23). And, based on his son's representations that Dayem didn't have attendance or punctuality issues in his 10-year work history until his last working days, Dr. Misja determined that he would "likely" have intermediate to severe "[p]roblems in responding appropriately to work pressures. (Tr. 523).

Important to Dayem's arguments before this court, Dr. Misja also noted that Dayem reported that his prior work consisted only performing cashier and stock duties at convenience stores that his brothers owned. (Tr. 519). Dayem said that his brothers let him go and took him back, but he wasn't provided any reasons for those actions. (Tr. 519). Dayem's son had also owned a store that he hoped Dayem could manage, but the store failed. (Tr. 519).

### 2. State Agency Consultant Opinions

On January 11, 2018, state agency psychological consultant Bruce Goldsmith, Ph.D. evaluated Dayem's mental health limitations based on a review of the record evidence (including Dr. Misja's opinion). (Tr. 62-63). Dr. Goldsmith determined that Dayem had no more than mild limitations in any mental health category and demonstrated no difficulty in sustaining work. (Tr.

4

62-63). On April 10, 2018, Kristen Haskins, Psy.D., concurred with Dr. Goldsmith's opinion. (Tr. 77-78).

### D. Relevant Testimony

Dayem testified at the ALJ hearing. (Tr. 36-50). Dayem said that he didn't watch much television because he felt tired, and his memory was "[n]ot 100 percent." (Tr. 39). He said that he forgot dates, appointments, and medications. (Tr. 39). He took naps throughout the day. (Tr. 40).

Dayem testified that he previously worked at a convenience store that he owned. (Tr. 43). In that role, Dayem acted as a clerk and handled inventory. (Tr. 45). He had family employees and handled payroll, but he never had to fire anyone. (Tr. 48-49). Dayem couldn't say exactly when he stopped working, but he said he didn't work in 2017 after he sold the business where he worked. (Tr. 41-43). Whenever he felt tired during the day, he would take a break. (Tr. 46-47).

## III. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d

at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B. Step Two: Mental Health Symptoms as Non-Severe Impairments**

Dayem argues that the ALJ failed to apply proper legal standards and reach a decision supported by substantial evidence in finding that he didn't have a severe mental health impairment at Step Two. ECF Doc. 13 at 5-10; ECF Doc. 17 at 1-4. Specifically, Dayem asserts that that the ALJ's reason for discounting Dr. Misja's opinion – that he didn't require medication or treatment after March 2018 – wasn't supported by substantial evidence because the ALJ ignored his reasons for noncompliance. ECF Doc. 13 at 6-7; ECF Doc. 17 at 3. Dayem also contends that the ALJ improperly relied upon the state agency consultants' opinions because: (1) they had determined his depression was a severe impairment; and (2) their assessment of only mild mental limitations was internally inconsistent with their severe-impairment finding. ECF Doc. 13 at 7; ECF Doc. 17 at 3-4. Further, Dayem argues that the ALJ's finding that he had "mild" paragraph B limitations at Step Two required a finding that he either met a listing or had

6

mental health limitations which should have been included in his RFC. ECF Doc. 13 at 8-9). And Dayem asserts that these errors at Step Two were not harmless because the ALJ didn't provide further explanation of how he considered his mental health symptoms in other parts of the written decision. ECF Doc. 13 at 9-10. The Commissioner disagrees. ECF Doc. 15 at 4-7.

At Step Two, a claimant has the burden to show that he has *at least one* "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). A "severe impairment" is a medical condition that has more than minimal effect on mental or physical function and is expected to last for 12 months or cause death. 20 C.F.R. §§ 404.1509, 404.1522; *Salmi v. Sec'y of Health & Human Servs.*, 744 F.2d 685, 691 (6th Cir. 1985). When a mental health impairment is at issue at Step Two, the ALJ must consider the functional areas ordinarily evaluated at Step Three in determining whether a claimant's condition meets the paragraph B criteria of Listing 12.00E: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). These criteria are ranted on a five-point scale from "none" to "extreme." 20 C.F.R. § 404.1520a(c)(4). A rating of "none" or "mild" will ordinarily result in a finding that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

When the ALJ's analysis includes an evaluation of medical opinion evidence, the ALJ must "articulate how he considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a); *see also De La Torre v. Berryhill*, No. 16-civ-24339, 2018 U.S. Dist. LEXIS 54352, at *25 n.8 (S.D. Fla. Mar. 30, 2018 (indicating that the same rule for evaluating medical opinions applies at both Step Two and Step Four). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). If

7

the ALJ finds that two or more medical opinions "are both *equally well-supported and consistent with the record but are not exactly the same*," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted) (emphasis added). Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5).

The ALJ applied proper legal standards in evaluating whether Dayem's alleged mental health impairments were severe. The ALJ properly focused his severity evaluation on the four paragraph B functional categories. 20 C.F.R. § 404.1520a(c), (d); (Tr. 17-20). Because the ALJ concluded that Dayem had no more than mild limitations in any of those categories, the ALJ properly concluded that Dayem's alleged mental health impairments did not have any more than a minimal effect on his ability to work and were, therefore, not severe. 20 C.F.R. §§ 404.1509, 404.1522; *Salmi*, 744 F.2d 685, 691; (Tr. 17-20). The ALJ also complied with the regulations when he explained that: (1) Dr. Misja's opinion was unpersuasive in light of Dayem's lack of mental health treatment (*i.e.*, the limitations in that opinion were inconsistent with the lack of mental health treatment history); and (2) the state agency consultant's opinions were persuasive because they were consistent with the objective evidence in the record as a whole. (Tr. 19); 20 C.F.R. § 404.1520c.

Further, the Commissioner is correct that Dayem's argument that the ALJ erred by failing to consider his "reasons for noncompliance" with mental health treatment misstates the record. The ALJ didn't conclude that Dayem was *noncompliant* with treatment recommendations. The ALJ concluded that there *wasn't any treatment*. (Tr. 19-20). This *lack of treatment* was a proper

8

factor for the ALJ to consider and was sufficient to cast doubt on Dayem's disabling symptoms. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); SSR 16-3p, 2016 SSR LEXIS 4, at *24 (Mar. 16, 2016) (An ALJ may consider that "[a]n individual's symptoms may not be severe enough to prompt him or her to seek treatment.").

Substantial evidence also supported the ALJ's conclusion that Dayem's alleged mental impairments were not severe, his reasons for discounting Dr. Misja's opinion, and his reasons for finding the state agency consultants' opinions persuasive. The dearth of mental health treatment in the objective medical evidence supported the ALJ's conclusion that Dayem had no more than mild limitations across the paragraph B categories and that Dr. Misja's opinion was inconsistent with the objective medical record. (Tr. 231-516, 525-572, 578-631). Further, to the extent any objective medical records did mention Dayem's mental health, those records also supported the ALJ's Step Two analysis. Such records included: (1) Dayem's reports that he lacked any psychiatric history; (2) Dayem's denials of any psychological symptoms, such as anxiety, agitation, or confusion; and (3) examination notes reflecting that Dayem was alert, oriented, and cooperative and had normal mood, affect, behavior, judgment, and thought content. (Tr. 237, 241, 248, 266-69, 276-77, 300, 341, 481, 496-97, 588, 604). Thus, the ALJ's conclusion that Dayem's alleged mental health impairments were not severe was reasonably drawn from the record and fell within the Commissioner's "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

9

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in conducting his Step Two analysis, the ALJ's conclusion that Dayem's alleged mental health impairments were not severe cannot be second guessed by this court. *Rogers*, 486 F.3d at 241; *Jones*, 336 f.3d at 476; *O'Brien*, 819 F. App'x at 416; *Biestek*, 139 S. Ct. at 1154.

C. Step Four: Past Relevant Work Analysis

Dayem argues that the ALJ improperly determined that he was able to return to his past work as a retail manager because he failed to consider that Dayem's prior work was accommodated. ECF Doc. 13 at 10-13. Dayem asserts that, although he testified that he owned the store where he had worked, his poor command of English and lack of a translator at the hearing resulted in a failure to explain that: (1) his brothers co-owned the store, fired him several times for performance issues, and hired him back; and (2) he could take breaks whenever he wanted. ECF Doc. 13 at 11-13. The Commissioner disagrees. ECF Doc. 15 at 7.

In evaluating whether a claimant can perform her past relevant work, the ALJ must compare the requirements of the claimant's past work with her RFC to determine whether she can still meet the physical and mental demands of that work. 20 C.F.R. § 404.1560(b). One of the relevant factors in this inquiry is whether the claimant's prior work was performed under "special conditions." 20 C.F.R. § 404.1573(c). As explained in *Fitzpatrick v. Colvin*, this factor requires a careful balancing act:

> a finding that a claimant worked under "special conditions" does not mean that a claimant did not engage in past relevant work. As the regulation itself states, "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(c). If § 404.1573(c) were interpreted to mean that past work is not substantial if an employee receives any accommodations from his employer, it would conflict with the requirement in SSR 82-61, 1982 SSR LEXIS 31 to consider a claimant's ability to maintain a past job as he actually performed it. Moreover, it would make little

10

> sense to read the regulation in a way that would permit an employee to quit his job and seek disability benefits even if he is capable of maintaining indefinitely the job he has.
>
> The most reasonable interpretation of § 404.1573(c) is that it applies when the accommodations are so great that the employee is keeping his position only through the employer's grace rather than because of any valuable service provided to the employer. *Tyra v. Secretary of Health & Human Services*, 896 F.2d 1024, 1031 (6th Cir. 1990) (rejecting argument that "special conditions" apply under § 404.1573(c) when claimant's supervisor "indicated that claimant's assigned duties were consistent and important to the overall effectiveness of our daily operations" and vocational expert testified that he did not consider claimant's job to be "make-shift" work); *O'Neal v. Commissioner of Social Security*, 1:12-CV-246, 2013 U.S. Dist. LEXIS 22221, 2013 WL 620377 (S.D. Ohio Feb. 19, 2013) *report and recommendation adopted*, 1:12-CV-00246, 2013 U.S. Dist. LEXIS 50965, 2013 WL 1438005 (S.D. Ohio Apr. 9, 2013) (suggesting that § 404.1573(c) may apply when past work was "created solely to allow plaintiff the opportunity to work regardless of whether he provided a valuable service to his employer").

No. 13-cv-27, 2013 U.S. Dist. LEXIS 181533, at *5-6 (W.D. Wis. Dec. 31, 2013).

VE testimony is also an important resource, and a "response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work" may be substantial evidence supporting a conclusion that the claimant can perform her past relevant work. 20 C.F.R. § 404.1560(b)(2); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (A VE's testimony in response to a hypothetical question is substantial evidence if the hypothetical accurately reflected the claimant's RFC as found by the ALJ).

The ALJ applied proper legal standards in evaluating whether Dayem could perform his past relevant work in light of his RFC. Here, the ALJ properly focused his inquiry on whether Dayem retained the RFC to meet the physical and mental demands of his past work as he had actually performed it (*not* as customarily performed). (Tr. 24); 20 C.F.R. § 404.1560(b). And in doing so, the ALJ expressly stated that he compared the requirements of the position with Dayem's RFC and relied upon the VE's testimony that he could perform his past work in

response to a hypothetical question accurately reflecting the ALJ's ultimate RFC finding. 20 C.F.R. § 404.1560(b)(2); *see also Howard*, 276 F.3d at 238; (Tr. 24); *see also* (Tr. 125-26).

Although the court agrees that it is awkward that the ALJ did not directly confront Dr. Misja's notes indicating that Dayem's *brothers* and *son* owned the business where he worked, that failure is not a fatal error. To begin, Dayem's argument overstates the record because *nothing* he cited supported his position that his brothers fired him for being unable to perform his job or otherwise establishes information that wasn't before the ALJ or VE in determining that he could perform his past work. ECF Doc. 13 at 12 (citing (Tr. 176, 519). Page 176 of the transcript notes only that Dayem's work was at a family-owned business – a fact squarely addressed at the ALJ hearing and understood by the VE in addressing whether he could perform his past work. *See* (Tr. 41-49). And page 519 doesn't say that Dayem couldn't perform that work, but that: (1) his brothers owned the businesses where he worked; (2) his brothers fired him and rehired him without explanation; and (3) Dayem's son owned another store that failed before Dayem could manage it. (Tr. 519). Even if those records said what Dayem incorrectly represents, the ALJ did not have to rely on them when Dayem himself testified that *he* owned the store, *he* performed the cashier and stocking duties, *he* managed *his own* employees, and *he* stopped working only after *he* sold the business. (Tr. 41-49). Additionally, Dayem's assertion that his testimony was the result of poor command of English is questionable when nothing in the record indicates that Dayem gave this testimony because he didn't understand the questions asked; his counsel didn't ask to stop the hearing for him to clarify that testimony; and he hasn't pointed to any indication that he requested an interpreter for the ALJ hearing.

Accepting Dayem's *own testimony* as true, the ALJ could have reasonably concluded that Dayem owned the business that he said he owned, performed the labor and management

12

functions that he said he performed, and stopped working for the reasons he said he stopped working (*i.e.*, he chose to sell the business). This presents a situation closer to the first scenario outlined in *Fitzgerald* – when any of the "special conditions" associated with the claimant's past work didn't stop that work from being substantial gainful activity. 2013 U.S. Dist. LEXIS 181533, at *5-6. And, at the very least, the evidence in the record *does not* establish that Dayem's past work was merely a token position he held by the good graces of the business owner(s) and in which he did not actually perform any work duties. *Fitzgerald*, 2013 U.S. Dist. LEXIS 181533, at *5-6; (Tr. 41-49, 176, 519).

Accordingly, because all the requisite information was before the ALJ and VE and the ALJ's hypothetical question to the VE accurately reflected Dayem's RFC, the ALJ's applied proper legal standards and reached a conclusion supported by substantial evidence when he relied upon the VE's testimony in concluding that Dayem could perform his past relevant work.

  **D.**  **Step Four: Ultimate RFC Determination**

In his reply brief, Dayem argues that the ALJ failed to apply proper legal standards in determining his ultimate RFC because the ALJ failed to explain how his mental impairments were considered in that portion of the written decision. ECF Doc. 17 at 4. Dayem asserts that this issue is uncontested because he raised it in his initial brief and the Commissioner failed to address it in his response brief. ECF Doc. 17 at 4.

Although Dayem claims in his reply brief that he raised an issue challenging the ALJ's ultimate RFC finding in his initial brief, he didn't. *Compare* ECF Doc. 13, *with* ECF Doc. 17 at 4. Accordingly, any challenge to the ALJ's ultimate RFC finding is forfeited. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (affirming a district court's finding that a claimant waived arguments that he did not raise in his merits brief); *Colvin v. Comm'r of*

*Soc. Sec.*, No. 4:18-cv-1249, 2019 U.S. Dist. LEXIS 168743, at *11 (N.D. Ohio Sept. 30, 2019) ("Plaintiff's attempts to more fully develop [his] argument in his reply brief comes too late, as it is well-established that new substantive issues cannot be raised in a reply brief."); *see also Bose v. Bea*, 947 F.3d 983, 993 (6th Cir., Jan 28, 2020) (holding that "any attempt to develop" an argument in a reply brief "was too late").

Even if the Court were to consider such a challenge, however, the only averments approaching an RFC argument are those already addressed in Dayem's Step Two challenge. And, for the same reasons discussed in the section addressing that challenge, any similar challenge to the ALJ's RFC determination would also fail. That is, the ALJ properly discounted Dr. Misja's opinion and the objective evidence supported the ALJ's conclusion that Dayem lacked any mental health impairments. *See* Section III.B., above.

**IV.  Conclusion**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Dayem's application for DIB is AFFIRMED.

**IT IS SO ORDERED.**

Dated: September 21, 2021

Thomas M. Parker
United States Magistrate Judge